## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

```
------------------------------x
                              :
KEVIN M. DANIELS          :    Civ. No. 3:16CV01181(SALM)
                              :
v.                            :
                              :
NANCY A. BERRYHILL,       :    June 28, 2017
ACTING COMMISSIONER,      :
SOCIAL SECURITY ADMINISTRATION:
                              :
------------------------------x
```

## RULING ON CROSS MOTIONS

Plaintiff Kevin M. Daniels ("plaintiff"), brings this appeal under §205(g) of the Social Security Act (the "Act"), as amended, 42 U.S.C. §405(g), seeking review of a final decision by the Commissioner of the Social Security Administration (the "Commissioner" or "defendant") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Act. Plaintiff has moved for an order reversing the decision of the Commissioner. [Doc. #16].

For the reasons set forth below, plaintiff's Motion for Order Reversing the Decision of the Commissioner **[Doc. #16]** is **DENIED,** and defendant's Motion for an Order Affirming the Decision of the Commissioner **[Doc. #18]** is **GRANTED.**[1]

---

[1] On February 2, 2017, plaintiff filed a Memorandum in Opposition to defendant's Motion for an Order Affirming the Decision of the Commissioner. [Doc. #19]. The Court construes this Memorandum as

~ 1 ~

## I.   PROCEDURAL HISTORY[2]

Plaintiff filed concurrent applications for DIB and SSI on October 10, 2012, alleging disability beginning August 1, 2008. See Certified Transcript of the Administrative Record, Doc. #11, compiled on August 12, 2016, (hereinafter "Tr.") 209-24.[3] Plaintiff's applications were denied initially on March 7, 2013, see Tr. 114-21, and upon reconsideration on June 28, 2013. See Tr. 125-30.

On November 10, 2014, plaintiff, represented by Attorney John C. Wirzbicki, appeared and testified at a hearing before Administrative Law Judge ("ALJ") Ronald J. Thomas. See Tr. 31-59; see also Tr. 122-23. Vocational Expert ("VE") Lawrence P. Takki also testified at the hearing. See Tr. 51-57; see also Tr. 197-99. On January 28, 2015, the ALJ issued an unfavorable decision. See Tr. 8-28. On June 1, 2016, the Appeals Council denied plaintiff's request for review, thereby making the ALJ's

---

plaintiff's reply brief, filed pursuant to the scheduling order entered on September 21, 2016. See Doc. #12.

[2] The parties filed a Stipulation of Facts on November 9, 2016. See Doc. #15.

[3] Plaintiff previously applied for SSI and DIB on February 18, 2010. See Tr. 200-08. These applications were denied initially on February 4, 2010, and upon reconsideration on January 26, 2011. See Tr. 11. Plaintiff's alleged onset date of August 1, 2008, was amended by the ALJ to January 27, 2011, the day after this previous determination. See Tr. 12.

January 28, 2015, decision the final decision of the Commissioner. See Tr. 1-7. The case is now ripe for review under 42 U.S.C. §405(g).

Plaintiff timely filed this action for review and now moves to reverse the Commissioner's decision. [Doc. #16]. On appeal, plaintiff argues:

1.  The ALJ erred by failing to consider a closed period;

2.  The ALJ erred at step three by failing to adequately address Listing 1.02;

3.  The ALJ erred at step two by failing to find that plaintiff's chronic pain is a severe impairment; and

4.  The ALJ's findings regarding plaintiff's mental limitations are not supported by substantial evidence.

See Doc. #16-1 at 11-21. As set forth below, the Court finds that ALJ Thomas did not err as contended.

## II.   <u>STANDARD OF REVIEW</u>

The review of a social security disability determination involves two levels of inquiry. <u>First</u>, the Court must decide whether the Commissioner applied the correct legal principles in making the determination. <u>Second</u>, the Court must decide whether the determination is supported by substantial evidence. <u>See</u> <u>Balsamo v. Chater</u>, 142 F.3d 75, 79 (2d Cir. 1998) (citation omitted). Substantial evidence is evidence that a reasonable

mind would accept as adequate to support a conclusion; it is more than a "mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The reviewing court's responsibility is to ensure that a claim has been fairly evaluated by the ALJ. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983) (citation omitted).

The Court does not reach the second stage of review – evaluating whether substantial evidence supports the ALJ's conclusion – if the Court determines that the ALJ failed to apply the law correctly. See Norman v. Astrue, 912 F. Supp. 2d 33, 70 (S.D.N.Y. 2012) ("The Court first reviews the Commissioner's decision for compliance with the correct legal standards; only then does it determine whether the Commissioner's conclusions were supported by substantial evidence." (citing Tejada v. Apfel, 167 F.3d 770, 773-74 (2d Cir. 1999))). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987).

"[T]he crucial factors in any determination must be set forth with sufficient specificity to enable [a reviewing court] to decide whether the determination is supported by substantial evidence." Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984) (alterations added) (citing Treadwell v. Schweiker, 698 F.2d 137, 142 (2d Cir. 1983)). The ALJ is free to accept or reject the testimony of any witness, but a "finding that the witness is not credible must nevertheless be set forth with sufficient specificity to permit intelligible plenary review of the record." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 260-61 (2d Cir. 1988) (citing Carroll v. Sec. Health and Human Servs., 705 F.2d 638, 643 (2d Cir. 1983)). "Moreover, when a finding is potentially dispositive on the issue of disability, there must be enough discussion to enable a reviewing court to determine whether substantial evidence exists to support that finding." Johnston v. Colvin, No. 3:13CV00073(JCH), 2014 WL 1304715, at *6 (D. Conn. Mar. 31, 2014) (citing Peoples v. Shalala, No. 92CV4113, 1994 WL 621922, at *4 (N.D. Ill. Nov. 4, 1994)).

It is important to note that in reviewing the ALJ's decision, this Court's role is not to start from scratch. "In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by

substantial evidence in the record and were based on a correct legal standard." <u>Talavera v. Astrue</u>, 697 F.3d 145, 151 (2d Cir. 2012) (quoting <u>Lamay v. Comm'r of Soc. Sec.</u>, 562 F.3d 503, 507 (2d Cir. 2009)). **"[W]hether there is substantial evidence supporting the appellant's view is not the question here; rather, we must decide whether substantial evidence supports <u>the ALJ's decision</u>**." <u>Bonet ex rel. T.B. v. Colvin</u>, 523 F. App'x 58, 59 (2d Cir. 2013) (citations omitted).

### III. <u>SSA LEGAL STANDARD</u>

Under the Social Security Act, every individual who is under a disability is entitled to disability insurance benefits. 42 U.S.C. §423(a)(1).

To be considered disabled under the Act and therefore entitled to benefits, plaintiff must demonstrate that he is unable to work after a date specified "by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). Such impairment or impairments must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C.

§423(d)(2)(A); 20 C.F.R. §§404.1520(c), 416.920(c) (requiring that the impairment "significantly limit[] ... physical or mental ability to do basic work activities" to be considered "severe" (alterations added)).

There is a familiar five-step analysis used to determine if a person is disabled. See 20 C.F.R. §§404.1520, 416.920. In the Second Circuit, the test is described as follows:

> First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Secretary will consider him disabled without considering vocational factors such as age, education, and work experience; the Secretary presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam). If and only if the claimant does not have a listed impairment, the Commissioner engages in the fourth and fifth steps:

> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Secretary then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of

proof as to the first four steps, while the Secretary
must prove the final one.

Id.

"Through the fourth step, the claimant carries the burdens
of production and persuasion, but if the analysis proceeds to
the fifth step, there is a limited shift in the burden of proof
and the Commissioner is obligated to demonstrate that jobs exist
in the national or local economies that the claimant can perform
given [her] residual functional capacity." Gonzalez ex rel.
Guzman v. Dep't of Health and Human Serv., 360 F. App'x 240, 243
(2d Cir. 2010) (alteration added) (citing 68 Fed. Reg. 51155
(Aug. 26, 2003)); Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir.
2009) (per curiam)). The Residual Functional Capacity ("RFC") is
what a person is still capable of doing despite limitations
resulting from his physical and mental impairments. See 20
C.F.R. §§404.1545(a)(1), 416.945(a)(1).

"In assessing disability, factors to be considered are (1)
the objective medical facts; (2) diagnoses or medical opinions
based on such facts; (3) subjective evidence of pain or
disability testified to by the claimant or others; and (4) the
claimant's educational background, age, and work experience."
Bastien v. Califano, 572 F.2d 908, 912 (2d Cir. 1978).
"[E]ligibility for benefits is to be determined in light of the
fact that 'the Social Security Act is a remedial statute to be

broadly construed and liberally applied.'" Id. (quoting Haberman
v. Finch, 418 F.2d 664, 667 (2d Cir. 1969)).

## IV.  **THE ALJ'S DECISION**

Following the above-described five-step evaluation process,
the ALJ concluded that plaintiff was not disabled under the Act.
See Tr. 22. At step one, the ALJ found that plaintiff had not
engaged in substantial gainful activity since January 27, 2011,
the day after the previous determination. See Tr. 14. At step
two, the ALJ found that plaintiff had the severe impairments of
arthritis of the bilateral knees status post arthroscopic
surgery; bipolar disorder; and polysubstance dependence. See id.
The ALJ determined that plaintiff's deep vein thrombosis was a
non-severe impairment. See id.

At step three, the ALJ found that plaintiff's impairments,
either alone or in combination, did not meet or medically equal
the severity of any of the listed impairments in 20 C.F.R. Pt.
404, Subpt. P, App. 1. See Tr. 14-16. The ALJ specifically
considered Listings 1.02 (major dysfunction of a joint), 12.04
(affective disorders), and 12.09 (substance addiction
disorders). See id. Before moving on to step four, the ALJ found
plaintiff had the RFC

> to perform sedentary work as defined in 20 CFR
> 404.1567(a) and 416.967(a) except he cannot operate left
> or right foot controls. He can occasionally balance,
> climb, crawl, kneel, bend, twist, and squat. He can only

occasionally interact with supervisors, coworkers, and the public.

Tr. 16. At step four, the ALJ concluded that plaintiff was unable to perform any past relevant work. See Tr. 21. At step five, and after considering plaintiff's age, education, work experience and RFC, as well as the testimony of the VE, the ALJ found that jobs existed in significant numbers in the national economy that plaintiff could perform. See Tr. 21-22.

## V.   DISCUSSION

Plaintiff raises four general arguments in support of reversal. The Court turns first to the argument that the ALJ failed to consider a closed period, because the resolution of this issue will necessarily impact the Court's analysis of plaintiff's other arguments.

### A.   Consideration of a Closed Period

Plaintiff summarily contends that the ALJ should have considered the "closed period" because "plaintiff was more severely disabled prior to his surgeries, and in the 22 months during which he had those surgeries and was in physical therapy." Doc. #16-1 at 19. Plaintiff does not support this argument with citations to any legal authority. Defendant responds that the "ALJ's decision reflects that he properly adjudicated the entirety of the relevant time period." Doc. #18 at 12.

At the outset of his opinion, the ALJ stated:

> The claimant filed prior Title II and Title XVI applications on February 4, 2010, and these were denied at reconsideration on January 26, 2011. These applications are final and binding, and are not reopened herein. Therefore, the present decision addresses only the period beginning on January 27, 2011, the day after the previous applications were denied, and continuing through the present.

Tr. 11. Plaintiff takes issue with this holding, and with the determination that plaintiff's onset date was January 27, 2011, the day after this previous determination. See generally Doc. #16-1 at 19.

Plaintiff's argument fails for several reasons.[4] As an initial matter, plaintiff presents his argument in a conclusory paragraph and fails to support his position with citations to legal authority. See Doc. #16-1 at 19. "Issues not sufficiently argued in the briefs are considered waived and normally will not

_____

[4] The record does not reflect that this particular argument was presented to the Appeals Council. Plaintiff's April 23, 2015, Statement in Support of Appeal submitted to the Appeals Council does not claim error as to the time period considered by the ALJ, nor does the statement claim that the ALJ erred by failing to consider a closed period. See Tr. 303-11. Nevertheless, the Court will consider this argument here, in light of the Supreme Court's holding "that a social security claimant who has exhausted all administrative remedies does not waive judicial review of any issues not raised before the Appeals Council." Plante v. Astrue, No. 06CV972(LEK)(VEB), 2009 WL 1951352, at *2 (N.D.N.Y. July 2, 2009) (citing Sims v. Apfel, 530 U.S. 103, 105 (2000)).

be addressed on appeal." Norton v. Sam's Club, 145 F.3d 114, 117 (2d Cir. 1998). Accordingly, the Court need not address this issue.[5]

Nevertheless, even if plaintiff had sufficiently briefed this claimed error, the Court would have rejected plaintiff's argument. The Regulations provide that "if you are dissatisfied with a determination or decision made in the administrative review process, but do not request further review within the stated time period, you lose your right to further review and that determination or decision becomes final." 20 C.F.R. §§404.987(a), 416.1487(a). "However, a determination or a decision ... which is otherwise final and binding may be reopened and revised by [the SSA,]" on its own "initiative, or you may ask that a final determination or decision to which you were a party be reopened." Id. at (a)-(b).

The record does not reflect, nor does plaintiff contend, that plaintiff ever moved to reopen the prior applications. Although plaintiff's counsel mentioned at the administrative hearing that there was an "issue" with respect to a closed period, he never sought to reopen the prior applications. See

---

[5] Plaintiff also did not further develop this argument in his reply brief. See generally Doc. #19.

Tr. 57-58. Further, even if plaintiff's mention of the closed period at the November 10, 2014, administrative hearing were to be construed as a request to reopen, any such request was untimely it as it came more than twelve months after the date of the notice of the initial determination (January 26, 2011). See 20 C.F.R. §§404.988(a), 416.1488(a). Plaintiff did not proffer "good cause" to trigger application of the longer four-year or two-year period in which to reopen a claim. See 20 C.F.R. §§404.988(b), 416.1488(b).[6] Plaintiff also fails to proffer any basis which would support reopening at "any time" pursuant to 20 C.F.R. sections 404.988(c) and 416.1488(c).

Plaintiff does not contend that there was a de facto reopening of his prior claim, either. "If the Commissioner reviews the entire record and renders a decision on the merits, the earlier decision will be deemed to have been reopened, and

---

[6] "A determination, revised determination, decision, or revised decision may be reopened — (a) Within 12 months of the date of the notice of the initial determination, for any reason; [or] (b) Within four years of the date of the notice of the initial determination if we find good cause, as defined in §404.989, to reopen the case[.]" 20 C.F.R. §§404.988(a)-(b); see also 416.1488(a)-(b) ("A determination, revised determination, decision, or revised decision may be reopened — (a) Within 12 months of the date of the notice of the initial determination, for any reason; [or] (b) Within two years of the date of the notice of the initial determination if we find good cause, as defined in §416.1489, to reopen the case[.]").

any claim of administrative res judicata to have been waived and thus, the claim is subject to judicial review." Byam v. Barnhart, 336 F.3d 172, 180 (2d Cir. 2003) (citation and internal quotation marks omitted). Although plaintiff's entire prior file is contained in the administrative record, see Tr. 312-814 (Exhibits 1F-15F), the ALJ's decision refers to only four pages of this prior file, and then only for background purposes. See Tr. 17 ("The claimant has a long history of knee pain, and in 2010, he underwent bilateral arthroscopic surgeries." (citing Exs. 9F at 14-16; 14F at 7-9)). Otherwise, the ALJ relies entirely on evidence submitted in connection with plaintiff's current applications. See generally Tr. 15-21.

Accordingly, the Court finds that the ALJ did not err by failing to consider the closed period. The ALJ properly considered plaintiff's claim for the relevant time period -- from the January 27, 2011, onset date, through the date of the ALJ's decision, January 28, 2015. See Pratts v. Chater, 94 F.3d 34, 35-36 (2d Cir. 1996) (To be entitled to DIB, a claimant must demonstrate that he or she was disabled prior to his or her date of last insured.); see also 20 C.F.R. §§416.202, 416.203 (To be entitled to an award of SSI, a claimant must only demonstrate that he or she became disabled at any time before the ALJ's decision.).

**B.     Step Three**

Plaintiff contends that the ALJ erred at step three of the
sequential evaluation because he "failed to adequately address
Listing 1.02." Doc. #16-1 at 11. Defendant responds generally
that substantial evidence supports the ALJ's step three finding.
See Doc. #18 at 5.

Listing 1.02 addresses major dysfunction of a joint:

> Characterized by gross anatomical deformity (e.g.,
> subluxation, contracture, bony or fibrous ankylosis,
> instability) and chronic joint pain and stiffness with
> signs of limitation of motion or other abnormal motion
> of the affected joint(s), and findings on appropriate
> medically acceptable imaging of joint space narrowing,
> bony destruction, or ankylosis of the affected joint(s).
> With:
>
> A. Involvement of one major peripheral weight-bearing
> joint (i.e., hip, knee, or ankle), resulting in
> inability to ambulate effectively, as defined in
> 1.00B2b[.]

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 1.02.

At step three, the ALJ concluded that plaintiff did "not
have an impairment or combination of impairments that meets or
medically equals the severity of one of the listed impairments."
Tr. 14. "In making this determination, the [ALJ] specially
considered listing 1.02 (major dysfunction of a joint)[,]" and
noted that "[n]o treating or examining physician has provided
any opinion or suggested any findings to demonstrate that the

severity of the claimant's impairments meets or medically equals the criteria of this or any other listed impairment." Id.

## 1. Substantial Evidence Supports the ALJ's Finding

Plaintiff contends that the ALJ's statement that no treating or examining physician has provided any opinion or findings to demonstrate that the severity of plaintiff's impairments meets Listing 1.02 is "demonstrably untrue." See Doc. #16-1 at 11-12.

"The applicant bears the burden of proof [at this stage] of the sequential inquiry[.]" Talavera, 697 F.3d at 151 (alterations added). "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria." Sullivan v. Zebley, 493 U.S. 521, 530 (1990).

Plaintiff relies on the opinion of consultative examiner Dr. Jan Akus to support his argument that plaintiff meets Listing 1.02. See Doc. #16-1 at 12. Specifically, plaintiff notes Dr. Akus' observations of plaintiff's painful motion of the knees and ineffective ambulation, and plaintiff's medical history of severe degenerative changes of both knees and torn menisci. See id.; see also Tr. 869-70 (report of Dr. Akus). The ALJ considered and summarized the findings of Dr. Akus' consultative report in his decision. See Tr. 17. Although Dr. Akus' report supports a finding that plaintiff meets some of the

criteria of Listing 1.02, it does not establish that plaintiff meets <u>all</u> of the specified medical criteria of this Listing.

Listing 1.02 requires an "inability to ambulate effectively." Under the Listings, an inability to ambulate effectively "means an extreme limitation of the ability to walk" and "is defined generally as having insufficient lower extremity functions to permit independent ambulation without the use of a hand-held assistive device(s) that limits the function of both upper extremities." 20 C.F.R. Pt. 404, Subpt. P, App. 1, §1.00B.2.b.(1). To ambulate effectively, one "must be capable of sustaining reasonable walking pace over a sufficient distance to be able to carry out activities of daily living." <u>Id.</u> at §1.00B.2.b.(2). Here, although evidence supports that plaintiff occasionally used a cane, <u>see</u> Tr. 852, 870, 871, there is no medical evidence that plaintiff required a hand-held assistive device that limited the function of <u>both</u> his upper extremities.[7] See <u>Shaw v. Chater</u>, 221 F.3d 126, 132 (2d Cir. 2000) ("[T]he Commissioner must ask whether, based solely on medical evidence,

---

[7] Plaintiff testified that he occasionally requires the use of crutches at home. <u>See</u> Tr. 39, 47. However, none of plaintiff's doctors or other treating providers have observed or prescribed the use of crutches. Plaintiff did not report using crutches in his October 18, 2012, Activities of Daily Living Report. <u>See</u> Tr. 256. Additionally, the ALJ found plaintiff "not entirely credible." Tr. 17.

claimant has an impairment listed in Appendix 1 of the regulations."). There is also substantial evidence of record that plaintiff is capable of ambulating effectively, as that term is defined by section 1.00B.2.b.(2). See Tr. 871 (plaintiff was ambulatory at mental status examination, although he walked with a cane); Tr. 892 (Plaintiff "walks daily to lower his cholesterol and would like a knee brace for his other knee for use when walking."); Tr. 940, 958 (noting plaintiff's gait was "WNL"); Tr. 984 (plaintiff was "fully ambulatory" during hospital admission for suicidal ideation); Tr. 1058 (plaintiff reported "walking and exercising daily"); see also Tr. 239-40 (During a face-to-face interview with plaintiff, Agency examiner observed plaintiff having "[n]o difficulty walking[.]").[8]

Next, plaintiff contends that when making a Listing determination, the ALJ "cannot limit his discussion to a simple statement that no doctor has ever given a specific opinion about a listing." Doc. #16-1 at 13. "An ALJ is required to explain his

---

[8] Plaintiff contends: "It is noteworthy here that the ALJ used the fact that the plaintiff attempts to walk on a daily basis against him, despite the fact that he did so for health reasons and needed two braces to do so." Doc. #16-1 at 13. The reasons why plaintiff walked on a daily basis are irrelevant to the fact that he was capable of consistently walking. Additionally, knee braces are not "assistive devices" which limit the use of plaintiff's upper extremities.

determination that a claimant failed to meet or equal the listings where the claimant's symptoms as described by the medical evidence appear to match those described in the listings.'" Yeomas v. Colvin, No. 13CV6276(MWP), 2015 WL 1021796, at *17 (W.D.N.Y. Mar. 10, 2015) (internal quotation marks omitted) (quoting Rockwood v. Astrue, 614 F. Supp. 2d 252, 273 (N.D.N.Y. 2009)). "Although ... an ALJ should set forth a sufficient rationale in support of his decision to find or not to find a listed impairment, the absence of an express rationale for an ALJ's conclusions does not prevent [the Court] from upholding them so long as [the Court is] able to look to other portions of the ALJ's decision and to clearly credible evidence in finding that his determination was supported by substantial evidence." Salmini v. Comm'r of Soc. Sec., 371 F. App'x 109, 112 (2d Cir. 2010) (citation and internal quotation marks omitted); see also Berry, 675 F.2d at 468 (affirming ALJ's decision at step three even though he did not articulate a rationale "since portions of the ALJ's decision and the evidence before him indicate that his conclusion was supported by substantial evidence"); Ryan v. Astrue, 5 F. Supp. 3d 493, 507–08 (S.D.N.Y. 2014) ("An ALJ's unexplained conclusion [at] step three of the analysis may be upheld where other portions of the decision and other 'clearly credible evidence' demonstrate that the

conclusion is supported by substantial evidence." (collecting cases)).

Here, the Court is able to look to other portions of the ALJ's decision to conclude that his step three finding is supported by substantial evidence. See, e.g., Tr. 17-18 (discussion of plaintiff's activities of daily living, history of knee pain and other complaints of pain). "Accordingly, because this is not a case in which we would be unable to fathom the ALJ's rationale in relation to evidence in the record, there is no need for us to remand this case to the ALJ for clarification." Salmini, 371 F. App'x at 113.

### 2. Alleged Mischaracterization of the Record

In connection with his step three argument, plaintiff also contends that the ALJ "typically mischaracterizes the evidence in order to minimize the plaintiff's problems." Doc. #16-1 at 13. Plaintiff first takes issue with the following excerpt of the ALJ's decision:

> Physical examinations of the claimant reveal some tenderness and crepitance in the knees, but are otherwise largely normal. Typically, he displays full strength in all muscle groups, and walks with a normal gait. Moreover, while he testified that he must often use a cane or crutches to ambulate, the only doctor who has ever observed him to use these devises is Dr. Akus, who examined him at this agency's request. [Exs. 16F at 16-22; 18F; 21F at 3-5; 24F at 2-4, 10-13].

Tr. 18; see also Doc. #16-1 at 13 (quoting this excerpt).

Plaintiff contends that an "[e]xamination of the records that

the ALJ cites in this quote clearly shows that they do not

support this statement." Id. Plaintiff then highlights

statements or findings from each of these records which he

contends contradict the ALJ's findings. See Doc. #16-1 at 13-14.

However, the records to which the ALJ cites do support the

statement at issue. For example, Exhibit 16F at page 18 states:

"Gait is normal." Tr. 842. Although plaintiff had significant

crepitus bilaterally, he also exhibited "full range of motion

for both knees[.]" Id. Exhibit 18F, which is the report of Dr.

Akus, states that plaintiff had "[n]egative straight leg

raising" and intact motor strength in the upper and lower

extremities. See Tr. 869-70. Exhibit 21F at pages 3-5 notes that

plaintiff had "mild crepitus bilateral knees," but otherwise

plaintiff had a normal physical examination. Tr. 891-93; see

also Tr. 1050-51 (Exhibit 24F, at pages 2-4, which is a repeat

of Exhibit 21F at pages 3-5). Finally, Exhibit 24F at pages 10-

13 notes that plaintiff denied joint pain and had a normal

physical examination. See Tr. 1058-60. Other evidence of record

supports these findings. See, e.g., Tr. 958 (normal gait and

full, or near full, strength in plaintiff's lower left

extremity); Tr. 1012 (normal gait and full range of motion of extremities).

Although plaintiff may disagree with the ALJ's characterization of the evidence, "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002) (citation omitted). Further, nothing in these records provides substantial evidence to support a finding that plaintiff meets Listing 1.02.

Plaintiff next contends:

> [T]he ALJ asserts that the plaintiff must be lying about the fact that he was told he would need knee replacements because he found no mention in the records that any doctor had told him that. Doctors do not always note everything they tell a patient. The plaintiff is relatively young, and doctors typically tell younger patients that while they will need knee replacements, they are not recommended for younger individuals.

Doc. #16-1 at 16. The ALJ's ruling does not assert that plaintiff "must be lying," but rather states that plaintiff "testified that he has been told that he will require bilateral knee replacements in the future, but the record contains no real evidence of this suggestion." Tr. 18. This is an accurate recitation of the record and plaintiff fails to identify any evidence to the contrary. Plaintiff offers only an unsupported post hoc rationalization for why no recommendation of knee replacement appears in the medical records. See Dumas v. Schweiker, 712 F.2d 1545, 1553 (2d Cir. 1983) (The Commissioner

"is entitled to rely not only on what the record says, but also on what it does not say[.]" (citation omitted)).

Plaintiff further contends that the ALJ erred by discounting plaintiff's credibility based on a medical record stating that plaintiff had fallen off of a motorcycle -- showing that plaintiff is capable of engaging in a range of physical activities. See Doc. #16-1 at 16; Tr. 18. Plaintiff states: "We know nothing of the circumstances of this fall, because while the ALJ felt it was important enough to cast doubt on the plaintiff's credibility, he didn't think it was important enough to question him about, so he could learn the circumstances." Id. Notably, plaintiff's counsel also had an opportunity to question the plaintiff at the administrative hearing, and plaintiff's counsel did not inquire about the circumstances of this fall.[9] "It is well established in the Second Circuit that a claimant for disability benefits is entitled to a full hearing under the Secretary's regulations and in accordance with the beneficent

_____

[9] Plaintiff was provided an opportunity to review his file prior to the hearing, which contained the relevant medical record. See Tr. 28 (list of exhibits before the ALJ, which reflects Exhibit 22F containing the medical record at issue reflected at Tr. 1010); see also 172-73 (July 11, 2014, Hearing Notice: "You May Submit More evidence and Review Your File"); See also 20 C.F.R. §§404.929, 416.1499 ("At the hearing, you may ... examine the evidence used in making the determination or decision under review, and present and question witnesses.").

purposes of the Act." <u>Losco v. Heckler</u>, 604 F. Supp. 1014, 1019 (S.D.N.Y. 1985) (collecting cases). At such hearings, "the ALJ is under the general duty affirmatively to develop the record and to ensure that all the necessary and relevant information is produced." <u>Id.</u> (collecting cases). A review of the administrative hearing transcript reveals that the ALJ complied with his duty to develop the record and afford plaintiff a full and fair hearing. <u>See</u> Tr. 31-59. The ALJ's failure to question plaintiff about one medical record out of hundreds does not support a conclusion that plaintiff was deprived of a full and fair hearing. Accordingly, the Court finds this argument to be without merit.[10]

Therefore, the Court finds no error in the ALJ's step three determination.

## C.   Findings as to Pain

Plaintiff next contends that the ALJ erroneously failed to find that the plaintiff's chronic pain was a severe impairment

---

[10] The ALJ did not base his entire credibility assessment of plaintiff on this one record. The ALJ properly followed the two-step process prescribed by the Regulations to assess plaintiff's credibility. <u>See</u> 20 C.F.R. §§404.1529, 416.929; <u>see also</u> Tr. 16-19. The ALJ also appropriately considered the other factors set forth in 20 C.F.R. sections 404.1529(c) and 416.929(c) to assess plaintiff's credibility. <u>See</u> <u>Skillman v. Astrue</u>, No. 08CV6481, 2010 WL 2541279, at *6 (W.D.N.Y. June 18, 2010); <u>see also</u> Tr. 16-19.

"despite the fact that the record amply supports such a finding." Doc. #16-1 at 17. Plaintiff notes that although such an omission can be cured at steps four and five of the sequential evaluation, there is no indication that plaintiff's pain was factored into the RFC with respect to plaintiff's ability to maintain concentration, persistence or pace. See id. at 17-18. Defendant responds that plaintiff has failed to establish chronic pain to be a medically determinable impairment. See Doc. #18 at 8-9. In reply, plaintiff contends that regardless of whether or not plaintiff has been diagnosed with a specific ailment, it is still "incumbent upon the ALJ to discuss the claimant's undoubted pain and the limitations that it imposed." Doc. #19 at 2.

The Court construes plaintiff's brief as making two separate arguments related to pain. First, that the ALJ erred at step two by failing to find plaintiff's chronic pain to be a severe impairment; and second, that the ALJ failed to adequately consider plaintiff's pain in formulating the RFC as to plaintiff's non-exertional limitations. The Court addresses each argument in turn.

**1. Step Two**

At step two, the ALJ is required to determine the severity of the plaintiff's impairments. See 20 C.F.R.

§§404.1520(a)(4)(ii), 416.920(a)(4)(ii); see also id. at (c). At this step, the plaintiff carries the burden of establishing that he is disabled, and must provide the evidence necessary to make determinations as to his disability. See 20 C.F.R. §§404.1512(a), 416.912(a). An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities. See Social Security Ruling 96-3p, 1996 WL 374181, at *1 (S.S.A. July 2, 1996). An impairment is "not severe" that constitutes only a slight abnormality having a minimal effect on an individual's ability to perform basic work activities. See id.

Plaintiff fails to point to any evidence of record supporting his assertion that he suffers from chronic pain amounting to a severe impairment. Even if it were error for the ALJ to omit plaintiff's "chronic pain" as a severe impairment at step two, any such error would be harmless. If the ALJ finds any impairment is severe, "the question whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence." Jones-Reid v. Astrue, 934 F. Supp. 2d 381, 402 (D. Conn. 2012) (quoting Pompa v. Comm'r of Soc. Sec., 73 F. App'x 801, 803 (6th Cir. 2003)), aff'd, 515 F. App'x 32 (2d Cir. 2013). "Under the regulations, once the ALJ determines that a claimant has at least one severe impairment,

the ALJ must consider all impairments, severe and non-severe, in the remaining steps." Pompa, 73 F. App'x at 803 (citing 20 C.F.R. §404.1545(e)). Thus, as long as the ALJ considers all impairments at later stages of the analysis, failure to find a particular condition "severe" at step two, even if erroneous, constitutes harmless error. See Reices-Colon v. Astrue, 523 F. App'x 796, 798 (2d Cir. 2013) ("Because [non-severe] conditions were considered during the subsequent steps, any error was harmless."); Rivera v. Colvin, 592 F. App'x 32, 33 (2d Cir. 2015) ("[E]ven assuming that the ALJ erred at step two, this error was harmless, as the ALJ considered both [claimant's] severe and non-severe impairments as he worked through the later steps.").

Here, the ALJ found several severe impairments and proceeded with the sequential evaluation, during which all impairments, severe and non-severe, were considered. As will be discussed further below, the ALJ also considered the allegations of plaintiff's pain throughout his decision. Thus, for the reasons stated, the Court finds no reversible error at step two of the sequential evaluation.

### 2. Consideration of Plaintiff's Pain

Plaintiff also appears to contend that the ALJ did not adequately consider plaintiff's claims of pain in determining

the RFC because "there is no indication that [the limiting effects of pain] were [factored into the RFC], at least with respect to the plaintiff's ability to maintain concentration, persistence or pace." Doc. #16-1 at 17-18. Defendant does not respond to this contention, instead focusing on the step two argument addressed above. See Doc. #18 at 8-9.

The regulations set forth how the Agency evaluates a claimant's symptoms, including pain:

> When the medical signs or laboratory findings show that you have a medically determinable impairment(s) that could reasonably be expected to produce your symptoms, such as pain, we must then evaluate the intensity and persistence of your symptoms so that we can determine how your symptoms limit your capacity for work. In evaluating the intensity and persistence of your symptoms, we consider all of the available evidence, including your history, the signs and laboratory findings, and statements from you, your treating or nontreating source, or other persons about how your symptoms affect you. We also consider the medical opinions of your treating source and other medical opinions as explained in §404.1527.

20 C.F.R. §§404.1529(c)(1), 416.929(c)(1).[11] The ALJ's decision indicates that he considered plaintiff's complaints of pain.

---

[11] 20 C.F.R. sections 404.1529 and 416.929 were amended effective March 27, 2017. Throughout this decision, the Court applies and references the versions of these Regulations that were in effect at the time of the ALJ's decision. See Lowry v. Astrue, 474 F. App'x 801, 805 n.2 (2d Cir. 2012) (applying and referencing version of regulation in effect when ALJ adjudicated plaintiff's claim); see also Alvarez v. Comm'r of Soc. Sec., No. 14CV3542(MKB), 2015 WL 5657389, at *11 n.26 (E.D.N.Y. Sept. 23, 2015) ("[T]he Court considers the ALJ's decision in light of the

Specifically, at step four of the sequential evaluation, the ALJ considered plaintiff's subjective testimony concerning his pain, and its alleged resulting limitations. See Tr. 16. Notably, plaintiff did not testify that his pain affects his concentration, persistence or pace. See id. ("Because of his pain, he has trouble sitting, walking, bending, stooping, and climbing stairs[.]"). Nor did plaintiff's counsel attempt to elicit any such testimony. See generally Tr. 31-50 (administrative hearing transcript). The ALJ next considered plaintiff's medical records and explicitly noted plaintiff's complaints of knee pain and physical examinations indicating pain. See Tr. 17. The ALJ ultimately concluded that plaintiff's "pain and other symptoms associated with [plaintiff's] bilateral knee impairments limit him to work at the sedentary level, prevent him from operating foot controls, and affect his ability to perform postural activities." Tr. 17.

Plaintiff points to no evidence suggesting that his pain negatively impacted his concentration, persistence or pace, and the record does not support such a finding. Plaintiff's mental status examinations were consistently normal and the reports

---

regulation in effect at the time of the decision." (citing Lowry, 474 F. App'x at 805 n.2)).

noted that plaintiff "attends to tasks normally." Tr. 876; see also Tr. 879, 882, 884, 886, 888, 1027, 1030, 1033, 1037, 1040, 1042, 1046. On only one of these thirteen visits to his psychiatrist did plaintiff indicate he was having "some pain issues and had been prescribed a medication for it by his pcp." Tr. 1027. Plaintiff never complained that his pain was interfering with his concentration, persistence or pace. The Court further notes the many records reflecting that plaintiff's pain level at rest was a "0/10", and from a "2-5/10" when walking or climbing stairs. See Tr. 942, 944, 946, 948, 950, 952, 954, 956, 958, 961. The ALJ limited plaintiff to sedentary work, and further limited his postural activities. Given the record, there is no reason to believe plaintiff would experience pain that would significantly impact his concentration, persistence or pace, as long as his work was limited as described in the RFC.

Although "the subjective element of pain is an important factor to be considered in determining disability[,]" Mimms v. Heckler, 750 F.2d 180, 185 (2d Cir. 1984) (citation omitted), an ALJ is not "required to credit [plaintiff's] testimony about the severity of her pain and the functional limitations it caused." Rivers v. Astrue, 280 F. App'x 20, 22 (2d Cir. 2008). "The ALJ has discretion to evaluate the credibility of a claimant and to

arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979); Snell v. Apfel, 177 F.3d 128, 135 (2d Cir. 1999). This was precisely the evaluation performed by the ALJ here. See Tr. 17-18.

Accordingly, the Court finds no error in the ALJ's consideration of plaintiff's pain.

### D. Assessment of Plaintiff's Mental Limitations

Last, plaintiff contends: "The ALJ's analysis ... is faulty as to all functional areas, but this discussion will focus on concentration, persistence and pace." Doc. #16-1 at 18. Defendant responds that the ALJ's finding of a mild limitation in the domain of concentration, persistence and pace is supported by substantial evidence. See generally Doc. #18 at 9-11.

At step three, the ALJ found plaintiff to have "mild difficulties" in concentration, persistence or pace. Tr. 15. In support of this finding, the ALJ stated:

> [Plaintiff] has indicated that he can pay attention for just a few minutes at a time. During a February 2013 psychological evaluation performed at this agency's request, he struggled to perform some tasks designed to assess attention, concentration, and memory, but he was able to complete others without difficulty, and his treating psychiatrist routinely fails to note any deficits in these areas on examination. Furthermore, he

> is able to prepare meals, shop, and drive, which all
> require him to sustain a good degree of attention and
> concentration [Hearing Testimony; Exs. 3E; 19F; 20F;
> 22F; 23F]. For these reasons he has a mild limitation in
> concentration, persistence or pace.

Tr. 15; see also Tr. 18 (discussion of plaintiff's mental

impairments).[12] Plaintiff essentially argues that the ALJ's RFC

determination is not supported by substantial evidence because

his findings with respect to plaintiff's concentration,

persistence and pace are not supported by substantial evidence.

See Tr. 16-1 at 18.

Plaintiff first contends that the findings of the

consultative examiner, Penelope Consentino, undermine the ALJ's

findings because Dr. Consentino "felt the plaintiff's

concentration abilities were more than moderately impaired[,]"

and this finding "was based on actual testing." Doc. #16-1 at

18. Following the administration of several cognitive tests, Dr.

Consentino assessed plaintiff with "[o]verall cognitive

abilities likely ... in the low average range[.]" Tr. 872.

Attention and concentration specifically were also found to be

---

[12] Later in the step three determination, the ALJ stated that "the
following residual functional capacity assessment reflects the
degree of limitation the undersigned has found in the 'paragraph
B' mental function analysis." Tr. 16. A claimant's RFC is "the
most [he] can still do despite [his] limitations." 20 C.F.R.
§§404.1545(a)(1), 416.945(a)(1).

in the "low average range[.]" Id. Although plaintiff

characterizes these findings as reflecting that his

concentration is "more than moderately impaired," this is not an

accurate characterization of Dr. Consentino's report, which

found plaintiff in the "low average range[.]" Tr. 872 (emphasis

added). In any event, the ALJ discounted this opinion as it was

"inconsistent with the medical evidence[,]" including the

records of plaintiff's "treating psychiatrist [who] has never

observed any deficits in these areas[.]" Tr. 20.

The ALJ's conclusion is supported by substantial evidence

of record -- most notably the treatment records of plaintiff's

treating psychiatrist, which consistently noted normal mental

status examinations and that plaintiff "attends to tasks

normally." Tr. 876; see also Tr. 879, 882, 884, 886, 888, 1027,

1030, 1033, 1037, 1040, 1042, 1046; Tr. 239 (Disability Report

observing that plaintiff had no difficulty concentrating); Tr.

966 (mental status following March 23, 2011, discharge: "His

recent and remote memory is fair. Judgment fair. Insight fair.

He appeared to be of average intellect."). "In making a

substantial evidence evaluation, a consulting physician's

opinions or report should be given limited weight because they

are often brief, are generally performed without benefit or

review of the claimant's medical history and, at best, only give

a glimpse of the claimant on a single day." Harrington v.
Colvin, No. 6:13CV01230(MAD), 2015 WL 1275337, at *7 (N.D.N.Y.
Mar. 19, 2015) (citation and internal quotation marks omitted)).
Accordingly, the Court finds no error in the ALJ's providing the
opinion of Dr. Consentino limited weight.[13]

Plaintiff next contends that "the other evidence upon which
the ALJ made his finding is not at all probative." Doc. #16-1 at
18. Specifically, plaintiff states that his ability to watch
television, shop one time per month, and drive for five minutes
at a time are not reliable evidence of his ability to
concentrate. See id. at 18-19; see also Doc. #19 at 4 ("Almost
none of the activities to which the ALJ alludes have any
rational connection to the ability to concentrate, or if they
do, the extent to which the claimant engages in them cannot be
said to be substantial evidence of his capabilities one way or
another.").

Plaintiff reported that from the time he wakes up until the
time he goes to bed, he takes his medication, watches television
and reads. See Tr. 250; see also 254. Plaintiff also indicated

---

[13] Although the ALJ provided "good reasons" for giving Dr.
Consentino's opinion limited weight, see Tr. 19-20, "an ALJ is
not required to provide 'good reasons' for not crediting a
consulting doctor's opinion[.]" Harrington, 2015 WL 1275337, at
*7 (citation omitted).

that he makes himself "TV Dinners" on a daily basis, Tr. 252, and that he shops in stores once a month for food. See Tr. 254. Plaintiff also stated that he "sometimes" drives. Tr. 253.

The Court agrees with plaintiff that his ability to shop once per month or drive for five minutes at a time is not necessarily indicative of his ability to concentrate. However, plaintiff's ability to read and watch TV, apparently for the entirety of the day, see Tr. 250, does suggest that plaintiff maintains a good ability to concentrate. This is particularly true where, as here, plaintiff represented there was "hardly any" change in these activities since August 1, 2008 (his originally alleged onset date). In August 2008, plaintiff was still working as a mechanic, a job which requires good concentration and attention. See Tr. 36 (plaintiff's testimony that he worked as a mechanic until August 2008); Tr. 258 (plaintiff's work history report reflecting he worked in auto repair from November 2007 to December 2008); Tr. 50 (VE testimony that plaintiff's prior work was classified as automobile repair mechanic, 620.261-010, SVP-7).[14] Although plaintiff's current daily activities alone might not support the

---

[14] This is considered a skilled job. See Starzynski v. Colvin, No. 1:15CV00940(MAT), 2016 WL 6956404, at *2 (W.D.N.Y. Nov. 29, 2016) (SVP 7 occupations are "skilled.").

ALJ's findings as to plaintiff's ability to concentrate, this information coupled with the records of plaintiff's treating psychiatrist provide the substantial evidence necessary to uphold the ALJ's findings.

Ultimately, plaintiff's argument rests on his alternative view of the evidence. Plaintiff concedes that "[t]hat there may be evidence in the record that supports the ALJ's conclusion, but that conclusion is undermined by the non-evidence he prefers to rely upon." Doc. #16-1 at 19. But the question for the Court is not whether there is substantial evidence to support plaintiff's view, but rather, "whether substantial evidence supports the ALJ's decision." Bonet, 523 F. App'x at 59 (citations omitted). Substantial evidence supports the ALJ's findings as to plaintiff's concentration, persistence and pace, and therefore, the Court finds no error.

## VI.  CONCLUSION

For the reasons set forth herein, the defendant's Motion for an Order Affirming the Decision of the Commissioner **[Doc. #18]** is **GRANTED**, and plaintiff's Motion for Order Reversing the Decision of the Commissioner **[Doc. #16]** is **DENIED**.

This is not a recommended ruling. The parties consented to proceed before a United States Magistrate Judge on September 27,

2016 [Doc. #14], with any appeal to be made directly to the
Court of Appeals. <u>See</u> Fed. R. Civ. P. 73(b)-(c).

SO ORDERED at New Haven, Connecticut, this 28th day of June,
2017.

                              _____/s/_____
                              HON. SARAH A. L. MERRIAM
                              UNITED STATES MAGISTRATE JUDGE